# Myer Rothstein, Appellant, *v.* The Pennsylvania Railroad Company.

*Negligence—Railroads—Contributory Negligence—Passenger—Jumping from moving train.*

The negligence of a railroad company which leads a passenger to get upon a wrong train is no warrant or excuse for his jumping from the train while it is moving at the rate of from ten to fifteen miles an hour.

A passenger is not justified in jumping from a moving train because one of the trainmen tells him that he is on the wrong train; that it will not stop to let him off, and that it is going slow and he can jump from it.

Argued May 8, 1895. Appeal, No. 372, Jan. T., 1895, by plaintiff, from judgment of C. P. McKean Co., Oct. T., 1892, No. 189, entering compulsory nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Trespass for personal injuries. Before MORRISON, J.

The substance of plaintiff's case, as stated in the opinion of the court refusing to take off nonsuit, was as follows:

The plaintiff's case is in substance as follows : His wife was engaged with her brother in business in Altoona, Pa. On the morning of March 8, 1892, plaintiff went there to look after his wife's business and remained in and about her store until evening. He left the store on 11th avenue, about 10:40 o'clock in the evening to go to the depot of the defendant to take a train for New York. On the way from the store to the train he stopped with a friend at a hotel and drank some whisky and then hurried along to the depot. He then says that he saw a train standing on the track; that he went to the baggage gate

and asked a man in charge of the gate if that train is going to New York, and he said, " Yes, do you want to go? " And plaintiff said, " I do; " that he showed his ticket and passed through the baggage gate—not the gate provided for passengers—and then hurried to the train which was moving as he got upon it; that he had a large satchel or telescope in his hand at the time; that he got upon the platform of the Pullman car and saw a man standing opposite him in a blue uniform and white cap; that he said to this man, " Please give me a berth for New York," and was told, " You are on the wrong train, sir ; " that he said then, " Stop, please, and let me off, I want to go to New York ;" that the employee said, " We cannot stop this train, step over on your left side and jump off, we are going slow ; " that the left side was opposite from where he got on; that he slipped down on the last step, and it was dark and he could not see, could not see how fast the train was going and he stepped off; that the next thing he knew or remembered he was under the car ; that he did not know whether the train was going fast or slow, all he remembered after stepping off was the car going over him. He further testified that his left foot was crushed and he had to have it amputated ; also that the train stopped and he was picked up and that there was no platform where he jumped off ; that he remained on the train from a minute to a minute and a half before getting off ; that there was no light and nothing to indicate how fast the train was going; that the road was smooth and he could not tell from the motion of the train whether it was going slow or fast ; that he had his satchel in his hand when he got off, and it was so dark he could not see anything ; that he jumped off with his satchel in his hand, facing the way the train was going; that the satchel was in his left hand and the railing in his right and he jumped with the motion of the train, and he then says : " The train was going so rapid that I found my feet had left me and I went down on my hands and knees, and the next thing that I knew I was under the cars. The train went so swift that it pulled the feet from under me."

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Eugene Mullin*, *T. F. Mullin* with him, for appellant.—While it is negligence under some circumstances for one to attempt to board or jump off a moving train, it is not negligence per se, and if the train is moving so slowly that the danger of getting off is not reasonably apparent, and the passenger acts under the instructions of an employee of the company, then the defense of contributory negligence is unavailing, and it is for the jury to say whether the danger is so apparent as to make it the duty of the passenger to desist from the attempt: Del. & Hudson Canal Co. v. Webster, 18 W. N. C. 339; Fowler v. B. & O. R. R., 18 West. Va. 579; 8 Am. & Eng. Cases 480; Bucher v. N. Y. & H. R. R. R., 98 N. Y. 128; C. R. R. v. Perry, 58 Ga. 461; D. & M. R. v. Curtis, 27 Wis. 158; Wharton on Negligence, 380.

If the passenger assumes a position of danger at the invitation of a servant of the carrier, or under an express or implied representation that he may safely occupy the position, the carrier will, in general, be held liable for the injury resulting therefrom: 2 Am. & Eng. Ency. of Law, 766; O'Donnell v. A. V. R., 59 Pa. 239; Dunn v. G. T. R. R., 58 Me. 187; Edgerton v. N. Y. C. R. R., 39 N. Y. 227; 3 Am. & Eng. R. R. Cases, 465.

It is not contributory negligence if the plaintiff has been injured in the effort to avoid an inconvenience by an act "not obviously dangerous, and executed without carelessness:" Johnson v. W. C. & P. R. R., 70 Pa. 357; Patterson's Ry. Accident Law, 16.

For the purpose of the contract under which the railroad company undertook to carry its passengers over its lines, and in view of its obligations to use only such cars as were adequate for safe conveyance, the sleeping car company, its conductor and porter were in law the servants and employees of the railroad company. Their negligence or the negligence of either of them as to any matters involving the safety or security of passengers while being conveyed was the neglect of the railroad company: P. R. R. v. Roy, 102 U. S. 451; Patterson Railway Accident Law, 242; P. W. & B. R. R. v. Brennan, 17 W. N. C. 327; P. R. R. v. Van Diver, 42 Pa. 365.

Whether the person causing the injury is a servant of the railway or not is a question for the jury: P. R. R. v. Spicker, 105 Pa. 142.

A passenger may justly suppose that a regular trainman knows when, how and where it would be safe to alight: Filer v. N. Y. C. R. R., 59 N. Y. 351.

When the plaintiff's testimony is contradictory, so that in one part of it he is entitled to go to the jury, and in the other part he is not, the case must go to the jury whose province it is to reconcile conflicting statements whether of the same or different witnesses, or to draw the line between them and say which shall prevail: Ely v. P. C. C. & St. Louis Ry., 158 Pa. 233.

*J. Ross Thompson*, for appellee.—Plaintiff was guilty of contributory negligence. Had he remained upon the train, he could have gotten off at the first station the train stopped at, or gone on to Pittsburg and made the railroad company pay for the loss of time, etc., if guilty of negligence; Stager v. Pass. Ry., 119 Pa. 74; R. R. v. Aspell, 23 Pa. 147; New York, etc. v. Enches, 127 Pa. 316; R. R. Co. v. Kilgore, 32 Pa. 292; R. R. v. Chenewith, 52 Pa. 382; Hunter v. C. & S. R. R., 112 N. Y. 357.

In this case it was not of the slightest importance whether any one of the train men told the plaintiff to jump off: Morrison v. Erie R. R., 56 N. Y. 302; St. L. I. M. & S. R. R. v. Rosenberg, 11 S. W. 212; Solomon v. R. R., 103 N. Y. 437; Deery v. R. R., 163 Pa. 403; Penna. R. R. v. Zebe, 33 Pa. 318.

The language of the man " in blue and white cap " even though an employee, would not charge the company with responsibility for the consequences of his careless act. It was plainly dangerous, and the plaintiff must be considered as having voluntarily assumed the risk involved in it: 4 Am. & Eng. Ency. of Law, 766; Penna. R. R. v. Langdon, 92 Pa. 21; Johnson v. R. R., 70 Pa. 357.

The case of Edgerton v. N. Y. C. R. R., 39 N. Y. 227, cited by the appellant, has no application to this case. It was a question of passengers injured by an accident. Also in case 59 N. Y. 351. There the train did not stop long enough to allow the passengers to get off. Nash. & Chatta. R. R. v. Erwin, Am. & Eng. R. R., was a case where a " special " on which plaintiff was riding collided with another train. Penna. R. R. v. Ray, 102 U. S. 451, simply decides that the conductor and porter of a sleeping car are employees of the railroad company,

so far as the condition, etc., of the car is concerned, not as to running the train, etc.

OPINION BY MR. JUSTICE McCOLLUM, November 4, 1895:

The plaintiff got upon the platform of one of the Pullman cars as the train was moving from the station at Altoona towards Pittsburg, and having requested a trainman to give him a berth for New York he was told that he was on the wrong train, that it would not stop to let him off, but that it was going slow and he could jump from it. He was on the car about a minute and a half after the train started from the station and the rate of speed it had attained when he stepped or jumped from it is best described in his own language. He said, " the train went so swift that it pulled the feet from under me." It is a reasonable conclusion from his testimony in regard to the speed of the train and the time he was on it that it was moving at the rate of from ten to fifteen miles an hour when he jumped from it. It is well settled that to jump from a moving train is an act of negligence which will defeat a suit for an injury caused by it unless it plainly appears that the circumstances connected with and surrounding it justified or excused it. In this case the plaintiff was safe upon the train and if his getting upon it instead of the New York train was due to the negligence of the company he might have had an action against the latter for the expenses he incurred and the inconvenience to which he was subjected in consequence of its fault. But his presence on the train through the negligence of the company furnished no warrant or excuse for jumping from it as he did. We must therefore for the purposes of this suit consider his presence there as due to his own unassisted mistake and regard the act of jumping from the car in the light of what occurred after he had gotten upon it. The sole attempted extenuation of the act lies in the conversation with the person called by the plaintiff a trainman, but whether this person was the conductor of the train, a brakeman, or a Pullman car porter does not appear. It does appear however that he did not order the plaintiff to jump from the car and that what he said amounted at most to a suggestion or expression of opinion that he might do so. In this conversation therefore there was no warrant for the act under consideration and nothing to subject the company to liability for the consequences of it.

The plaintiff jumped from a rapidly moving train about eleven o'clock at night and when it was so dark that he could not see where the jump would land him.   He did so to escape being carried to the next station when he desired to go in the opposite direction.    This desire was the sole cause of his rash and entirely voluntary act, and he must be considered as having deliberately accepted the risks involved in it.    It is essential to the safety of the traveling public that the railroad company shall be held to a strict accountability to its passenger for an injury resulting from its negligence, but common justice requires that it shall not be held liable to him for an injury caused by his own negligence or violation of its rules.

We find nothing in the cases cited by the plaintiff to sustain his contention which is at variance with the views expressed and the conclusion reached by the learned court below.

The specifications of error are overruled and the judgment is affirmed.